Let's go on to the next matter set at 10 in the Matter of V.V. Yes, argument to the appellate respondent. May it please the court counsel, my name is Barbara Gopin. I represent the respondent, Mr. B, with regards to his appeal of this involuntary medication order. Because I just want to get to the heart of the matter here. I'm just going to argue the three main issues. Actually, I think the three main interesting issues in this case. The first is the issue of mootness. As you well know, most involuntary medication, mental health orders are moot. This does qualify under two of the exceptions to mootness. But I'm going to address today the capable reputation yet evading review exception. Basically, this applies when there's a reasonable expectation that the same party will be subject to the same action. So, there's actually, in this case, he's been a forensic patient since 2008. So, at a DHS forensic facility. He's already had one Moot 23 order on a different issue from here. And also another appeal that we dismissed. So, he's had at least, I would say, about three different previous involuntary medication orders. And three other petitions I faced. So, there is, you know, and because of the stability of Mr. He's not going to change his illness or his thing. And the same issues of what the state has to prove and the constitutionality of what has to be proved will still have to be, you know, he'll face that in the future until his theme date is expired. So, we feel that it's a very strong case. There's not much case law on this one. It's a forensic patient facing involuntary medication orders. But it's pretty strong that he'll probably be subject to the same type of action. So, the other issue is whether the court applied too broad of a definition of deterioration of ability to function or threatening behavior when it determined that his behavior qualified. I'm going to reserve the issue of capacity. We actually fully briefed that issue. So, with, as you well know, under 52107.1 of the Mental Health Code, there's three criteria it has to be proven for involuntary medication. First is suffering. Second is deterioration of ability to function or threatening behavior. The state just has to prove one of those elements by clear and convincing evidence. They don't have to prove all three. So, here, the circuit court found, after our initial court hearing, that there was deterioration of ability of function. And the state did not, in its closing argument, said we're not alleging threatening behavior. The court didn't find threatening behavior. Then I gave the circuit court a bite of the apple, filing a motion to reconsider. And then they said, oh, I meant to also find threatening behavior. So, it's kind of interesting on that part. With deterioration of ability to function, basically the law is if you're unable to meet basic needs. So, when a person, because of their mental illness, does not eat or take care of their basic items, such as showering or soap disruptive, that their basic health is in danger. So, as this court recently ruled in Debra B., basically, the doctor testified, basically, deterioration of ability to function is deterioration such that it's a basic level of functioning. And there, the doctor testified that the respondent was deteriorating because she got in the business of other patients and always talking to them and always aggravating. And here, there's similar vague testimony. I mean, I think the doctor gave two kind of sets of testimony. First, she said, well, he's been unemployed since 2007. Well, he's forensic. That's going to be, he's not going to be employed. The other one was that he had some insomnia and some non-showering. But it was vague evidence and similar to that that this court recently discounted in Debra B. But there is evidence that my client was in good physical health. He kept himself in shape. His room was neat and tidy. And the second part, though, for the deterioration of ability to function was that Mr. Nee does have intense beliefs, and they get aggravated when his mental peaks in value. So, when it goes to a peak, he gets really religious, very intense. And he will, the state alleged that he invades the personal spaces of his fellow residents. So, basically, the issue is that sufficient deterioration of ability to function if he invades the personal spaces of others. I think the case law is pretty clear that they envision deterioration of ability to function for your basic things, eating, sleeping, rooming. So, I'm not saying that endangering that to me doesn't qualify under this. But here, there's pretty much a lack of specificity with this. And also, I think invading someone's personal space should not be considered within this. It's more of a nature of patient management. It's easier for, I mean, it's easier for the hospital if he is medicated and then doesn't invade other patients' personal spaces. And his behavior was more of the nature of disruptive behavior, which actually under the legislative thing, they did eliminate disruptive. They had a, it used to be threatening and disruptive behavior as one of the criteria, and they eliminated disruptive behavior. So, I think this is an issue of more patient management, and he would be easier to manage if he didn't have more symptoms. But I think, basically, his health was good. He kept himself in shape. His room was neat and clean. He may have been loquacious in this. If you read the transcript, it is kind of a, not word salad, but he loved his vocabulary. But it's not, I don't think it's the clear, I think it's unconstitutionally, allowing this would be unconstitutionally broadening this criteria, that it would allow more symptoms of mental illness than the actual behavior itself to apply for deterioration ability function. And so, basically, the second criteria the court later found was threatening behavior. Actually, at the trial court, the state did not argue for this criteria. And the trial court initially did not find threatening behavior. And I think they, in the motion to reconsider, they said, well, he's endangering himself. That, because of the evasion of personal space, that can be considered threatening behavior. So, but if you look at the facts, Alton never placed him in either restraints or seclusion. When, what happened was, there was one incident where a patient responded to the evasion of personal space by punching him. But my client never even fought back in self-defense. So, they mainly relied on two points of evidence. The mania, which caused him to invade other person's personal space, and some unspecified threatening statements to the other patient. But it was never specified what he said. They just said, oh, he has threatening statements. So, I think this does not rise to the level of behavior needed to establish, really, the state's invasive activity for involuntary medication. You know, if it was, I can understand if it was such a threatening thing, it would happen more frequently. But he's been, he was there by this time, over five years, and only one time another patient punched him. There was no other instance where he was attacked because of this behavior that the state presented. So, if it was that serious, then he would have been more endangered or more, would be more in instances of how this would endanger himself. And, you know, mostly if someone, and I've dealt with him, you can, you know, you just run away or walk away. You don't go and punch the person. So, it's kind of interesting in this, they're putting threatening behavior where my client was the victim of someone who punched him. So, and there is a substantive due process concerns that this is really extending the category of who could be medicated. And Torski, it was, granted, it was an admission case, and the legislator had for once you could be admitted for conduct that places another or self in harm's way. And they said that was too broad of a definition for commitment. So, if it's too broad for a definition for commitment. You have the opportunity for rebuttal. Okay. Thank you. Argument for the state. Please support. My name is Linda McClain, and I represent the state in this appeal from the 90 day order for involuntary medication. The state maintains this appeal from the 2013 90 day order is moot. And that no exception to the mootness doctrine applies, or respondent raises only sufficiency of the evidence issues. My opponent only addressed the capable of repetition, but avoiding review exception, I will likewise. That requires that there be a reasonable expectation that the same complaining party be subject to the same action again. In this case, since she's only, since my opponent's only raising sufficiency of the evidence issues. A new case would involve completely different evidence. And any decision this court makes on this appeal would be of no use and of no bearing on the case in the future. Because there'd be completely different evidence. As far as the deterioration of respondents' ability to function and exhibiting threatening behavior. These are both sufficiency of the evidence questions. Definitions in the statute need to be somewhat fluid because no two respondents' behaviors are alike. My opponent attempts to turn these issues into statutory interpretation or constitutional issues to avoid the Alfred H. H. Henry Alfred H. H. holding that sufficiency of the evidence issues do not fit within the exceptions to the mootness doctrine. But I think the attempts do not work. As for deterioration of ability to function. Case law has already established that a deterioration in function is not limited to an inability to meet basic health needs such as eating and dressing. While this court states in In Re Debrid B, a recent case, that the state must show a deterioration in the responsibility to function on a basic level. It does not state that this means ability to meet basic health needs. In fact, in In Re Debrid B, this court cites to a case I cite in my brief, In Re Lisa P, as an example of a case appropriately finding deterioration in ability to function. In In Re Lisa P, a second district case from 2008, deterioration in ability to function was evidenced by the man being homeless and unemployed, frequently overreacting to minor confrontations, something we have similar in our case, inappropriate conduct resulting in restraint or medication. In this case, I think he was medicated on an emergency basis for the incidents that happened. And the staff was afraid that his rage would escalate and explode, and he would explode. So that's similar to this case also. In this case, the patient has episodes of mental illness, generally starting in November. During these episodes, he gets into the personal spaces of other people and tries to impose his ideas, resulting in danger to himself because others retaliate. In particular, since December, and at the hearing there was evidence that since December of 2012, he had been making threatening remarks to one particular person, hovering over him in his personal space, until he became so agitated that he hit the respondent. I also argued that the case In Re Deborah B, the facts were very vague in that case, unlike in my case where we have a specific testimony concerning him being in a personal space, trying to impose ideas, making threatening remarks. In In Re Deborah B, the doctor testified that, in fact, the patient was not making threatening remarks. And in In Deborah B, the doctor did not elaborate or give express examples of how a respondent was in other people's business. So I'd ask this court to distinguish In Re Deborah B. As far as exhibiting threatening behavior, respondent argues that there is no case law, and whether threatening behavior consists of actions when the respondent endangers himself. I'd ask this court to find that that is not this case. In this case, he threatened, respondent threatened the other person with his invasion of their person, personal space, and threatening remarks. And the extent of that threat is demonstrated by their retaliation in hitting him. So I don't think this is, and I don't think this is merely a case of patient management or patient interaction. I think that he has these episodes that are, as the doctor testified, happen about the same time every year, where he is in other people's space and making threatening remarks. And the medicine is needed to help him get over his mental illness. We'd ask the court to affirm the holding below. Are there any questions? Probably so. Thank you, counsel. Thank you. Ms. Butler. Thank you. Just on the issue of muteness, this court recently held sufficiency of evidence issues. We claim this is more of a statutory interpretation, but sufficiency of evidence issues is not a bar for muteness. It says it's usually, this court recently in Depper v. said it usually doesn't fit, but it doesn't say it never fits. And Alfred H. H. said that each case must individually look on it. But Alfred H. H. rejected a bar that all cases are moved, nor did it say that all mental health cases are an exception to move. It really emphasized that each case must be looked on each individual basis. So just saying that this is sufficiency of evidence does not bar this court from reviewing this, especially in this case where he has episodic, this is almost every year he faces medication. So it is capable of repetition on these issues. And with regard to the threatening behavior, and I understand this is kind of a knotty issue, and I think we need the court's wisdom on this because the circuit court was confused by it because initially he said, no, there was no threatening behavior. And then upon my motion to reconsider, he said, oh, yes, there is threatening behavior. So it wasn't that clear cut in the beginning if he said there was no threatening behavior. So I think, first of all, there needs to be clarification on this issue. I've heard reaction from, you know, I didn't go into the public interest thing, but there's been very, from my judge, there's been relief that there's more crystallization of what these categories are. And I think the more of these can be crystallized, the better it is for practice on the lower level. And then second of all, that if the threatening behavior was so egregious, the threatening remarks, the judge, the state would have conceded it, would have argued it in the initial trial, and the trial court would have found it. Thank you for your time and understanding. All right. Thank you, counsel, for your arguments. We'll take this case under advisement.